## JONES v. CALLERY.

No. 12740.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 3, 1932.

Rehearing Denied Jan. 14, 1933.

Dee Estes and S. R. Graves, both of Fort Worth, for appellant.

W. F. Kelly, T. W. Dunn, and Charles T. Rowland, all of Fort Worth, for appellees.

DUNKLIN, Justice.

J. C. Johnson (colored) departed this life on or about August 1, 1930, in the city of Fort Worth, where he had resided for several years. At the time of his death he was the owner and in possession of two town lots in Fort Worth. Daisy Callery was appointed administratrix of his estate on August 26, 1930, and the lots were listed in the inventory returned by her as belonging to the estate of J. C. Johnson, deceased. By an amended petition filed in the same court on April 3, 1931, Clara Johnson Jones, joined by her husband, L. J. Jones, claimed an undivided one-half interest in those lots and prayed for a decree of partition setting apart that interest to her. The basis of her claim was that the property was acquired by the deceased while they were living together as husband and wife. It was further alleged that she and J. C. Johnson were lawfully married in the month of December, 1889, in the state of Louisiana, and that they continued to live together as husband and wife until September 15, 1917, when they finally separated and thereafter ceased to further live together.

In another count of the petition it was alleged that the property was paid for as the result of joint efforts of herself and Johnson while they were living together, and that even though it should be held that she was not lawfully married to him, yet she was entitled to a one-half interest in the same since she was induced by him to believe in good faith that she was his lawful wife and entitled to a wife's interest in said estate so accumulated by their joint efforts.

Daisy Callery, the administratrix of the estate, filed an answer to that application which embodied a general demurrer and special exceptions presenting the contention that the claim so made by Clara Johnson Jones was in the nature of an action of trespass to try title, which the county court had no jurisdiction to determine. The general demurrer and special exceptions were sustained, and from that order Clara Johnson Jones prosecuted an appeal to the district court of the Ninty-Sixth judicial district, to which the records in the probate court were transmitted in accordance with the statutes in such cases made and provided.

On January 16, 1931, Clara Johnson Jones, joined by her husband, L. J. Jones, filed a suit in the same district court in trespass to try title seeking to recover an undivided half interest in the property mentioned above, in which Daisy Callery, administratrix of the estate of J. C. Johnson, deceased, and several other persons were named as defendants, including several persons who the record shows were the offsprings of J. C. Johnson and Delia Johnson, deceased, while he and Delia Johnson lived together as husband and wife in the state of Louisiana prior to the alleged marriage of J. C. Johnson to plaintiff Clara Johnson Jones; also several persons who plaintiff alleged were offsprings of J. C.

Johnson and herself after J. C. Johnson moved from the state of Louisiana to the city of Fort Worth.

The claim of title presented by plaintiff was based upon the same facts alleged in her application for partition filed in the county court; while the claim of title by the defendants was based upon the contention that Delia Johnson, their mother, was the lawful wife of J. C. Johnson and that relation was never dissolved and that J. C. Johnson was never lawfully married to the plaintiff prior to the date she claimed a marriage with L. J. Jones.

On motion of plaintiff both suits were consolidated and tried as one. The consolidated case was tried before a jury, and the following are special issues submitted to them with their findings thereon:

1. "Was J. C. Johnson married to the mother of Daisy Callery prior to 1889? Answer: Yes."

2. "Was J. C. Johnson divorced from Delia Johnson, the mother of Daisy, if they were married? Answer: No."

3. "Did Clara Champaign engage in a marriage ceremony with J. C. Johnson on or about 1889? Answer: No."

The trial court then rendered a judgment denying plaintiff Clara Johnson Jones any relief both in the appealed case from the county court and in the trespass to try title suit, together with a further judgment that her claim of title be removed as a cloud upon the title of defendants in whom title was decreed. From that judgment plaintiff has prosecuted this appeal.

■ We overrule the assignment of error to the action of the court in consolidating the two cases: First, because the consolidation was made upon motion of appellants; and, second, because there was no possible harm to appellants as a result of such consolidation.

■ Appellants insist that the evidence was insufficient to sustain the finding of the jury that plaintiff was never married to J. C. Johnson by a regular marriage ceremony; and the further finding that he was lawfully married to Delia Johnson, the mother of defendants. Without undertaking to recite the evidence at length, we believe it sufficient to say that it was ample to support the finding of marriage to the mother of the defendants prior to the time when plaintiff claims a marriage to him. The evidence shows without controversy that J. C. Johnson and Delia Johnson, the mother of defendants, lived together in Louisiana and held themselves out

as husband and wife for many years, and that defendants were born to them during that time and were recognized by them as their children, and that marriage was never dissolved prior to the time plaintiff claims she was married to the same man. That fact, of itself, would defeat the claim of a lawful marriage to plaintiff, since J. C. Johnson was legally incompetent to enter into a second marriage while his first marriage remained in legal effect. And the evidence was sufficient to sustain the further finding that plaintiff was never married to J. C. Johnson by virtue of a marriage ceremony. While she testified to such a marriage occurring shortly before J. C. Johnson left Louisiana and came to Fort Worth, Tex., such testimony was not corroborated by any public record or certificate of such a marriage ceremony, and the jury was authorized to discredit that testimony both because of her personal interest in the suit and her further testimony that in the year 1917 she left J. C. Johnson in Fort Worth and went to Oklahoma where she married L. J. Jones, her present husband, who joins her as a coplaintiff in this suit, and with whom she has lived ever since—all without first procuring a divorce from J. C. Johnson, whom she claims to be her first husband.

■ If plaintiff was never lawfully married to J. C. Johnson, then she was in no position to claim a community interest in the property under and by virtue of article 4619, Rev. Statutes, defining what shall constitute community property of husband and wife; nor under article 2578, Rev. Statutes, regulating the descent of such community estate upon the dissolution of the marriage relation. Ft. Worth & R. G. Ry. Co. v. Maggie Robertson, 103 Tex. 504, 121 S. W. 202, 131 S. W. 400, Ann. Cas. 1913A, 231.

■ The claim presented in a second count in plaintiff's petition of an undivided half interest in the property, on the ground that she in good faith entered into the marriage relation with J. C. Johnson upon his assurance that he was an unmarried man and that the property was thereafter acquired by their joint efforts, was not submitted to the jury nor requested to be submitted; and therefore was waived. And the same is true of plaintiff's further allegation of a common-law marriage with J. C. Johnson. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

Accordingly, all assignments of error are overruled, and the judgment of the trial court in the two consolidated suits is in all things affirmed.